Opinion for the court filed by Circuit Judge DYK.
Concurring opinion filed by Circuit Judge HUGHES.
ON PETITION
DYK, Circuit Judge.
ORDER
Petitioners POSCO and its U.S. subsidiary POSCO America Corporation (collectively, “POSCO”) seek a writ of mandamus from an order of the United States District Court for the District of New Jersey modifying the court’s protective order to allow foreign courts access to petitioners’ proprietary information. We grant the petition.
I
On April 24, 2012, Nippon Steel & Sumi-tomo Metal Corporation (“Nippon Steel”) filed suit in the District of New Jersey, charging POSCO with patent infringement and unfair competition. On April 5, 2013, the district court entered a protective order prohibiting the cross-use of confidential materials which “shall be used by the receiving Party solely for purposes of the prosecution or defense of this action.” Ex. E, at 2. Following the entry of the protective order, POSCO produced several million pages of documents containing confidential information.
Nippon Steel also brought suit in Japan against POSCO (based in Korea) for alleged trade secret misappropriation. In response, POSCO filed its own declaratory judgment action in Korea, asserting that it had not stolen Nippon’s trade secrets.
Given that discovery in this country’s federal court system is more generous than in Japan and Korea, Nippon Steel, attempting to obtain and use documents that perhaps it would not otherwise be able to obtain and use in those foreign courts, moved the district court to modify its discovery protective order for the purposes of providing foreign counsel in the Japanese and Korean actions approximate *1374 ly 200 pages of proprietary documentation relating to POSCO’s manufacturing process.
The Special Discovery Master assigned to the case issued a Letter Opinion, concluding that Nippon Steel’s request to produce those documents to counsel for those foreign proceedings should be granted. The Special Master looked to the Federal Rules of Civil Procedure and the balancing framework for modifying discovery orders set forth by the Third Circuit in Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir.1994), a case involving the modification of a protective order to disclose a settlement agreement to U.S. newspapers, and not the provision of documents to foreign courts. See id. at 775. Pansy articulated the standard as follows: “The party seeking to modify the order of confidentiality must come forward with a reason to modify the order. Once that is done, the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order.” Id. at 790.
In conducting his assessment, the Special Master acknowledged that the sole purpose of the request was to facilitate evidence gathering in the foreign proceedings. He concluded that the evidence identified “seems to be relevant” to those proceedings and that restrictions should be put in place to keep the information confidential. Ex. L, at 22. Among the restrictions that the Special Master sought to impose “as a condition to having these documents submitted in a foreign jurisdiction” were that “[bjefore the documents may be submitted to a foreign court, the court must identify the information and agree that it would be maintained as confidential and restricted from third party access.” Id.
Petitioners filed objections to the Special Master’s ruling. On October 30, 2014, the district court entered an Order and Opinion affirming the Special Master’s ruling. Petitioners then filed their request for a writ seeking review under 28 U.S.C. § 1651(a). Our review is appropriate because the order in question turns on claims of confidentiality that raise an important issue of first impression. See In re United States, 669 F.3d 1333, 1336 (Fed.Cir.2012).
Neither the Special Master’s ruling nor the district court’s order addressed the role that 28 U.S.C. § 1782 or the Supreme Court’s decision in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004), should play in this determination. We asked the parties for supplemental briefing on: “Whether, in light of the Supreme Court’s decision in [Intel ], 28 U.S.C. § 1782 provides the exclusive means for securing documents from another party for use in a foreign proceeding?” In re POSCO, No. 2015-112, ECF No. 17, at 1-2 (Fed.Cir. Dec. 22, 2014). Thereafter, we requested the government’s views on this issue. The parties and the government have filed responsive briefs.
II
For mandamus to be available, (1) “the party seeking issuance of the writ must have no other adequate means to attain the relief he desires”; (2) “the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable”; and (3) “the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.” Cheney v. U.S. Dist. Court for the D.C., 542 U.S. 367, 380-81, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (citations, quotations, and alterations omitted). “[Mjandamus may properly be used as a means of immediate appellate review of orders compelling the production of documents claimed to be protected by privilege or other interests in *1375 confidentiality.” In re MSTG, Inc., 675 F.3d 1337, 1342 (Fed.Cir.2012) (quoting Bogosian v. Gulf Oil Corp., 738 F.2d 587, 591 (3d Cir.1984)); see also id. at 1341 (“[Mjandamus may be appropriate where a discovery order ‘raises a novel and important question of power to compel discovery, or ... reflects substantial uncertainty and confusion in the district courts.’ ”) (quoting 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3935.3 (2d ed.1996)). We think this petition satisfies that standard because it presents an important and unresolved issue.
Ill
Section 1782, in relevant part, provides: The district court of the district in which a person resides or is found may order him to ... produce a document or other thing for use in a proceeding in a foreign or international tribunal ... upon the application of any interested person ... [and unless otherwise specified] the document or other thing [will be] pro-dueed[ ] in accordance with the Federal Rules of Civil Procedure.
28 U.S.C. § 1782(a).
POSCO’s supplemental brief argues that § 1782, along with certain mutual legal assistance treaties, provides the exclusive means to obtain discovery for use in foreign proceedings. Nippon Steel argues that in the absence of a plain statement of pre-emptive intent, § 1782 does not limit the scope of discovery under the Federal Rules or the standard for modifying protective orders and is not relevant. The government expresses concern that a holding that § 1782 is the exclusive means for obtaining discovery for use in a foreign proceeding would conflict with various statutes, treaties and district court decisions, and the government asserts that § 1782 is not relevant to the district court’s authority to permit the use of discovered materials in foreign proceedings.
IV
The question before us is the role of § 1782(a) in the context of the request to modify this protective order. We consider this issue against the background of the Supreme Court’s decision in Intel and district court decisions addressing § 1782.
In Intel, the Supreme Court considered the framework under § 1782 for assessing whether to authorize discovery for use in foreign proceedings. It recognized that “comity and parity concerns may be important as touchstones for a district court’s exercise of discretion in particular cases,” 542 U.S. at 261, 124 S.Ct. 2466, and set forth specific factors as “guides for the exercise of district-court discretion,” id. at 263 n. 15, 124 S.Ct. 2466, in deciding whether to provide evidence for use in foreign proceedings. See id. at 264, 124 S.Ct. 2466 (“[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so.”); id. at 262, 124 S.Ct. 2466 (referring to “[c]oncerns about maintaining parity among adversaries in litigation”). As the Seventh Circuit has noted, “[t]he section 1782 screen — the judicial inquiry that the statute requires — is designed for preventing abuses of the right to conduct discovery in a federal district court for use in a foreign court.” Heraeus Kulzer, GmbH v. Biomet, Inc., 633 F.3d 591, 597 (7th Cir.2011).
We agree that § 1782 may not directly govern requests to modify a protective order to make material available in a foreign proceeding — as opposed to direct requests for evidentiary material for use in foreign proceedings pursuant to § 1782. And even as to the latter situation § 1782 is not exclusive since, as the government points out, there are various treaties and alterna *1376 tive mechanisms for securing materials for use in foreign proceedings. But here these other mechanisms appear to be unavailable, and we think that § 1782 still has a role to play when a party seeks to modify a protective order to use previously discovered documents in a foreign proceeding. Other circuit courts have not specifically addressed this issue after Intel.[1]
The government argues that “district courts have consistently held that section 1782 does not control the disclosure or use of evidence in domestic litigation.” U.S. Amicus Br. at 11. But while the cases state that § 1782 is not controlling, two of the district court opinions cited by the government apply the Intel factors.
In Infineon Technologies AG v. Green Power Technologies Ltd., 247 F.R.D. 1 (D.D.C.2005), the district court granted the defendant’s motion to modify a protective order to permit certain discovery in the district court case to be used in a related patent litigation between the parties in Germany. Id. at 2. In doing so, however, the district court cited and applied § 1782, “which governs discovery for foreign tribunals,” and found that the Intel factors supported the modification of the protective order to allow foreign cross-use. Id. at 4-5.
In INVISTA North America S.a.r.l. v. M & H USA Corp., No. 11-1007-SLR-CJB, 2013 WL 1867345 (D.Del. Mar. 28, 2013), although the district court found that the Intel factors were not applicable “to the question of whether such documents can be reviewed by an opposing side’s foreign attorneys, but not be'used in a foreign legal proceeding,” id. at *3 n. 4 (emphasis in original), the court applied the Intel factors in assessing whether to modify a protective order to allow the plaintiff to use documents in a foreign proceeding, see id. at *3-5. POSCO also cites the docket from another case from the District of Delaware, in which the court’s oral order denied a request to use documents subject to a protective order in a German proceeding, noting that § 1782 “provide[s] other, appropriate mechanisms for Plaintiff to seek the relief it is requesting.” POSCO’s Supp. Br. Ex. 1 (dkt. # 64).[2]
Thus, unlike the district court here, which did not address § 1782 or the Intel factors, at least three district courts have acknowledged that § 1782 and the Intel factors were relevant when a party seeks to modify a protective order to use discov *1377 ered materials in a pending foreign proceeding.
Those factors include: (1) whether “the person from whom discovery is sought is a participant in the foreign proceeding”; (2) “the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance”; (3) “whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States”; and (4) whether the request is otherwise “unduly intrusive or burdensome.... ” Intel, 542 U.S. at 264-65, 124 S.Ct. 2466 (citations omitted). These factors, deemed by Congress to be relevant under § 1782, are not accounted for by the Pansy standard, applied here by the district court.
Thus, while § 1782 may not govern instances in which a party seeks to modify a protective order to allow use of discovered materials in a foreign proceeding, we think that the considerations articulated under § 1782 and Intel are relevant to that issue and must be considered together with other considerations pertinent under Federal Rule of Civil Procedure 26 as articulated in Pansy. Contrary to the concurrence, this is not a situation in which the documents were produced voluntarily, in which case the Intel considerations may be irrelevant. In this case, the district court ordered that the confidentiality order be modified and the materials were originally produced to the district court subject to compulsory process.
V
Here, the district court did not address the § 1782 factors, but instead applied the Third Circuit’s standard in Pansy. The restrictions purportedly imposed by the Special Master on the foreign courts relate to the very “comity and parity concerns,” Intel, 542 U.S. at 261, 124 S.Ct. 2466, addressed by § 1782. Yet the notion of the use of discovery in foreign proceedings was not addressed at all in Pansy, and the standard announced there takes no account of these concerns. See Pansy, 23 F.3d at 783-90. We therefore grant mandamus for purposes of directing the district court to conduct the proper assessment giving due consideration to the Intel factors.
Accordingly,
POSCO’s petition is granted, the order granting the motion to modify the protective order to allow for use of discovery in foreign proceedings is vacated, and the district court is directed to conduct further proceedings consistent with this Order.

. Nippon Steel calls our attention to cases before Intel, including one from this court, that have not looked to § 1782 in determining whether protective orders should be modified. See, e.g., In re Jenoptik AG, 109 F.3d 721 (Fed.Cir.1997); Beckman Indus., Inc. v. Int’l Ins. Co., 966 F.2d 470, 475 (9th Cir.1992). In Jenoptik, we considered whether deposition testimony discovered in U.S. district court subject to a protective order could be submitted to a foreign court in Germany. See. 109 F.3d at 722. In declining to consider whether the deposition testimony would have been independently discoverable in Germany, we stated that "[cjase law interpreting the requirements of section 1782 is not relevant to a determination whether a protective order may be modified to permit the release of deposition testimony, already discovered, to another court.” Id. at 723. But Jenoptik (and Beck-man ) issued before Intel, which clarified the broad scope of § 1782 and the considerations underlying the statute. And Beckman made no mention of § 1782. See 966 F.2d at 475-76. Therefore, those cases are not controlling here.

. The third case relied on by the government- . Oracle Corp. v. SAP AG, No. C-07-01658 PJH (EDL), 2010 WL 545842 (N.D.Cal. Feb. 12, 2010) — also recognized the possible relevance of the Intel factors. See id. at *3 (The Intel factors "may arguably be worthy of consideration” in determining whether to modify a protective order to use discovered material in a co-pending foreign proceeding.).